UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHEAL N.B. ATTAWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-02613-GCS |
| | ) |
| ALEXANDRIA BROWN, | ) |
| ZACHARY MOORE, | ) |
| DAVID DEAN, | ) |
| DARREN GALLOWAY, | ) |
| and | ) |
| ALFONSO DAVID, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Pending before the Court are two motions for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant David, (Doc. 89, 90), and Defendants Moore, Dean, and Galloway. (Doc. 94, 95). Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning the claims against them prior to filing the present lawsuit because he failed to follow the grievances procedures set forth in the Illinois Administrative Code.[1] Plaintiff, by and through counsel, filed an

---

[1] On April 9, 2024, the Court granted Defendant Brown's motion to withdraw the affirmative defense of exhaustion of administrative remedies. (Doc. 91).

opposition to the motions. (Doc. 96). On July 25, 2024, the Court held a hearing on the motions, heard testimony and argument, and took the matter under advisement. Based on the reasons delineated below, the Court **DENIES** Defendant David's partial motion for summary judgment for failure to exhaust administrative remedies (Doc. 89) and **GRANTS in part** and **DENIES in part** Defendants Moore, Dean, and Galloway's motion for summary judgment on the issue of exhaustion (Doc. 94).

On July 28, 2023, Plaintiff Micheal Attaway, a former inmate with the Illinois Department of Corrections ("IDOC"), filed this action for deprivations of his constitutional rights while he was detained at Shawnee Correctional Center ("Shawnee") pursuant to 42 U.S.C. § 1983.[2] Specifically, he alleges that prison staff failed to protect him from sexual advances by his cellmate, that he was brutally attacked and raped by his cellmate, and since the attack neither the administrators nor medical or mental health personnel were willing to help him. Thereafter, on September 13, 2023, Plaintiff filed an amended complaint. (Doc. 17).

Specifically, Plaintiff alleges that on May 27, 2023, he informed Defendant Sergeant Dean that his cellmate, Defendant Inmate William Isaiah Shanholtzer, was sexually harassing him. (Doc. 17, p. 9). Defendant Dean indicated he would not take any action because it was not his responsibility to act. About 45 minutes after seeking help from Defendant Dean, Plaintiff alleges he was brutally attacked and raped by his cellmate.

---

[2] The record reflects that Plaintiff is no longer incarcerated.

Plaintiff alleges that as a result his right shoulder was dislocated, and his left hip and lower back were injured. He tried to inform the wing officer (whose identity he has been unable to ascertain because the officer refuses to provide it) about the incident, but the officer refused to report it. The wing officer apparently believed he was lying.

On May 28, 2023, Plaintiff sent a statement to Defendant Warden Galloway about the attack and rape, but Defendant Galloway did not respond. (Doc. 17, p. 10). On May 29, 2023, Plaintiff informed Defendant Zach Moore, but Defendant Moore refused to start an investigation or to take any other action. *Id.* at p. 9.

Plaintiff sought medical treatment for his injuries related to the attack and rape, but Defendant Brown refused care. (Doc. 17, p. 10). He further alleges that Defendant Dr. David refused to send him for an x-ray that might reveal internal damage. Plaintiff also alleges that Defendants Brown and David refused any care for chronic injuries from an old car crash and insisted there was no treatment for those injuries. *Id.* Plaintiff seeks monetary relief, an order of protection against inmate William Shanholtzer, and an order that Defendants be held accountable for failing to follow PREA protocols. *Id.* at p. 11.

On August 29, 2023, Plaintiff's filed another lawsuit. In this Complaint from case 23-cv-2946-DWD, Plaintiff reiterates that on May 27, 2023, he was brutally attacked and raped by his cellmate. (Doc. 49, p. 7). He alleges he has written many statements about the details of his attack, and he has written to Defendant Galloway and Internal Affairs officers to no avail. He has also sought mental health services, and he has filed grievances,

but he received no response to those pleas for help. Eventually, he wrote to the PREA Coordinator in Springfield, Illinois, and almost 2.5 months after the attack, an investigation was commenced. He alleges that during the investigation, "they" claimed he failed to report the incident, which he maintains is untrue. He alleges that due to the negligence and deliberate indifference of defendants, there is no forensic evidence of the attack, and he may be left with permanent injuries. He seeks monetary compensation, and he asks that the defendants be held to PREA protocols. *Id.* at p. 8.

These two cases were consolidated on November 6, 2023. (Doc. 48). The next day, on November 7, 2023, the Court conducted a preliminary review of the complaints pursuant to 28 U.S.C. § 1915A. Plaintiff was allowed to proceed on the following claims:

>Count 1: Failure to protect claim against Defendant Dean for refusing to assist Plaintiff prior to the rape on May 27, 2023;
>
>Count 2: Eight Amendment deliberate indifference claim against Defendants Galloway and Moore for refusing to document the incident or to render aid; and
>
>Count 3: Eighth Amendment deliberate indifference claim against Defendants David and Brown for refusing medical care after the attack and rape.

(Doc. 53).

## FACTS[3]

The parties agree that these are the relevant grievances relating to the claims in this case: a grievance dated May 27, 2023, a grievance dated June 29, 2023,[4] and a grievance dated September 29, 2023.

On May 27, 2023, Plaintiff filed a grievance (# 2023-5-265) complaining about issues with his current cellmate wherein he was afraid of being sexually assaulted and asked for a single cell. (Doc. 90-2, p. 74, 75; 95-3, p. 1, 2). The record pertaining to this grievance contains an Offender Grievance Cancelation dated May 31, 2023, wherein, Plaintiff asked to withdraw grievance # 2023-5-265. This document purportedly contains Plaintiff's signature. (Doc. 90-2, p. 72; 95-3, p. 3). According to the investigational interview conducted by Defendant Moore, who investigated this grievance, Plaintiff spoke to Defendant Moore on May 31, 2023. (Doc. 95-3, p. 4-6). Allegedly, during this investigation, Plaintiff admitted he did not get along with his cellmate, denied any physical altercation between them, and admitted that the cellmate never tried to grab him or force him in any way. He also agreed to cancel the grievance. This document too purports to contain Plaintiff's signature. *Id.*

During the *Pavey* hearing, Plaintiff testified that he met with Defendant Moore two

---

[3] The facts are taken from the parties' submissions, the records attached thereto, and the testimony from the *Pavey* hearing.

[4] It is difficult to ascertain from the record whether Plaintiff filed one grievance or two grievances on June 29, 2023.

to three days after he filed the grievance. During this meeting Plaintiff attempted to tell Defendant Moore what occurred, but Defendant Moore refused to listen. Plaintiff testified that he did not sign the documents referenced above, that the signatures are not his on the documents, and that he did not agree to withdraw the grievance. Plaintiff also testified that after he met with Defendant Moore, he was moved to different cell in another cell house and that he never got anything back on that grievance. Additionally, Plaintiff wrote another grievance about this situation and never got a response back. Lastly, Plaintiff admitted that he previously exhausted some administrative remedies while incarcerated.

Defendant Zachary Moore testified that he was employed as a correctional counselor at Shawnee since October 2023. Prior to that time, he was employed as the 7:00 to 3:00 shift Internal Affairs Officer. Defendant Moore testified that he met with Plaintiff because of the allegations contained in the May 27, 2023, grievance. Defendant Moore averred that Plaintiff wanted to cancel the grievance because the allegations were false, and Plaintiff alleged those issues in the grievance so he could get placement in a single cell. Further, Defendant Moore averred that he took Plaintiff's statement, typed it out, and Plaintiff signed both the statement and cancellation form in his presence.

On June 29, 2023, Plaintiff submitted a grievance (# 2023-8-53) complaining about medical treatment for his right shoulder and that he could not do the exercises he was assigned to do. The Administrative Review Board ("ARB") received the grievance on

August 28, 2023. Thereafter, on January 2, 2024, (after Plaintiff initially filed this lawsuit and his amended complaint) the ARB denied the grievance finding that it was appropriately addressed by the facility and that treatment was at the discretion of the IDOC physicians. (Doc. 90-1, p. 11; 95-2, p. 2).[5] It is hard to ascertain from this grievance who Plaintiff is grieving about.

That same day, Plaintiff filed another grievance complaining about staff conduct and medical treatment regarding his right shoulder. (Doc. 90-1, p. 24, 25; 95-2, p. 15, 16). Plaintiff specifically mentions the nurse practitioner and requests that his "shoulder be checked out by a doctor outside this facility." The ARB received the grievance on July 10, 2023. Along with the grievance, Plaintiff sent a letter to the ARB stating that he filed directly with the ARB as "I attempted to file it here at Shawnee Correctional Center and it was returned to me without being acknowledged or given a grievance number. . . . This would be time #5 that they have done this to me." (Doc. 90-1, p. 26; Doc. 95-2, p. 17). Subsequently, on July 12, 2023, the ARB returned the grievance finding the facility responses were not included and that the grievance was not in accordance with DR504F. (Doc. 90-1, p. 23; Doc. 95-2, p. 14). This grievance does not have a number and does not name any Defendants by name/description except "nurse practitioner."

On September 29, 2023, Plaintiff filed a lengthy emergency grievance complaining

---

[5] The record does not contain this grievance; it only contains the ARB's determination regarding this grievance. It is possible that the two grievances dated June 29, 2023, are one and the same. The record, however, is not clear as to this.

about staff conduct, mail handling, medical treatment, and ADA Disability Accommodation. (Doc. 90-1, p. 13-22; 95-2, p. 4-13). In this grievance, among many things, Plaintiff complains that he was brutally attacked and raped by his cellmate on May 27, 2023; that he submitted at least 35 requests to the healthcare unit to treat his injuries; that he needs medical treatment; that Defendant Dean could have prevented the attack; and that "IDOC & Wexford Health Employees were informed . . . and they have chosen to do little to nothing about it." (Doc. 90-1, p. 16, 17; 95-2, p. 7, 8). The ARB received the grievance on October 10, 2023; seven days later, the ARB returned the grievance finding that it did not follow DR 504.840 in that it "[n]eeds a CAO response due to being marked emergency." (Doc. 90-1, p. 12; Doc. 95-2, p. 4). The record does not reflect that Plaintiff attempted to exhaust this grievance by resubmitting it with the Chief Administrative Officer's response.

## LEGAL STANDARDS

For purposes of the present summary judgment motion, this Court will view the evidence in the light most favorable to Plaintiff as the non-moving party and draw all reasonable inferences in his favor. *See Leibas v. Dart*, 108 F.4th 1021, 1024 (7th Cir. 2024). "Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison

Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th

Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq.* The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of

Page **10** of **17**

individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d).

"The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials.

## DISCUSSION

Defendants maintain that Plaintiff's grievance dated June 29, 2023, does not specifically reference them or any action or inaction by them. Thus, Plaintiff failed to exhaust his administrative remedies against them with that grievance. Further, Defendants maintain that the grievance dated September 23, 2023, was returned for failing to attach the CAO response. It was furthermore untimely as the grievance was filed September 23, 2023, and the incident giving rise to the claims occurred on May 27, 2023. Lastly, the IDOC Defendants argue that the grievance dated May 27, 2023, was "withdrawn" by Plaintiff and, thus, Plaintiff could not have exhausted his claims with that grievance.

*Grievance dated May 27, 2023*

During the *Pavey* hearing, Plaintiff contends that he was thwarted in his attempts to exhaust his grievance dated May 27, 2023, and thus, the grievance process was unavailable to him. *See, e.g., Ross v. Blake*, 578 U.S. 632, 644 (2016) (noting that

administrative remedies can be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process."); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Dole*, 438 F.3d at 809. Under the PLRA, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). *Ross* describes three scenarios in which the administrative process is "unavailable": first, when the process "operates as a simple dead end," such that "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates"; second, when the process is "so opaque that it becomes, practically speaking, incapable of use"; and third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–644. *See also Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018) (explaining that these scenarios are "not a closed list").

Here, the Court finds that Defendants have not carried their burden of proof to warrant summary judgment. Defendants contend that the grievance process was clearly available to Plaintiff as he has exhausted his administrative remedies as to Defendant Brown and he exhausted his administrative remedies in other cases. However, as noted *supra*, there is conflicting testimony from Plaintiff and Defendant Moore as with whether Plaintiff signed the cancellation of the grievance, and the investigation form relevant to this grievance. Plaintiff testified that he did not sign those forms, that the signatures on

the forms were not his, and that he never heard anything back regarding this grievance. Defendant Moore testified that Plaintiff signed those forms on May 31, 2023. Considering this dispute, the Court finds that the Defendants did not meet its burden of proof as it failed to present sufficient evidence that the signatures were Plaintiff's. For example, it could have provided evidence comparing the signature on both forms with Plaintiff's signature on other documents and/or provided expert testimony comparing the signatures. The Court finds Plaintiff's attempts at exhaustion with this grievance were thwarted. Thus, Plaintiff's claim against Defendant Dean in Count 1, failure to protect claim, will proceed. However, this grievance cannot be used to exhaust as to the claims against the other Defendants as the allegations against them pertain to conduct that occurred after Plaintiff was allegedly assaulted on May 27, 2023.

*Grievance dated June 29, 2023*

Defendants argue that Plaintiff failed to properly identify them by name or by description in this grievance. Although exhaustion is not intended to provide individual notice to each prison official who might later be sued, it is designed to provide the prison with notice of the problem to give the facility an opportunity to fix it. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaint." *Maddox*, 655 F.3d at 722. The Illinois Administrative

Code requires that an inmate's grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). An inmate does not have to specifically identify the individual by name, but he must include as much descriptive information as possible. *Id.*

Here, the Court finds that the grievance June 29, 2023, cannot serve to exhaust as to the claims against the IDOC Defendants, but can serve to exhaust as to Defendant David. As stated previously, this grievance does not name or describe any conduct specifically attributable to these Defendants. The Court notes that it does describe a "nurse practitioner in the healthcare unit about my shoulder in my right shoulder, she ordered x-rays of it that showed at the joint/ball and socket were within normal range" whom he saw that day. It further mentions that multiple hospitals refused to do anything for it. It goes on to state "the healthcare units refused to do anything other than the bare minimal." (Doc. 90-1, p. 24, 25). As to the IDOC defendants, this grievance does not name them, and it does not describe the conduct that is related to the claims that were allowed to proceed in this case. As to Defendant David, it is a closer call, and at this stage the Court finds that Plaintiff has exhausted his claims as to Defendant David. The grievance provides a time frame of June 2023 wherein healthcare repeatedly refused to do anything. This obviously could include Defendant David, which Plaintiff will have the burden to

prove at the merits stage. As to this stage, the grievance suffices to put the prison on notice of the claims and the opportunity to address the problems.

*Grievance dated September 29, 2023*

Lastly, the Court addresses the emergency grievance dated September 29, 2023, in which Plaintiff complained about the alleged conduct relating to the allegations in this case. The ARB received the grievance on the grievance on October 10, 2023, and on October 17, 2023, the ARB responded to the grievance: "[d]oes not follow DR. 504.840. Needs a CAO response due to being marked emergency." The record does not reflect that Plaintiff attempted to exhaust this grievance by resubmitting it with this information. Thus, this grievance cannot be said to exhaust administrative remedies against Defendants for these claims. Thus, this grievance was not exhausted for procedural reasons and not resolved by the ARB. Furthermore, as pointed out by Defendants, Plaintiff did not file this grievance within 60 days of the alleged incident as required by 20 ILL. ADMIN. CODE § 504.810(a). As such, this grievance does not exhaust Plaintiff's administrative remedies as to the claims against these Defendants.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant David's partial motion for summary judgment for failure to exhaust administrative remedies (Doc. 89) and **GRANTS in part** and **DENIES in part** Defendants Moore, Dean, and Galloway's motion for summary judgment on the issue of exhaustion (Doc. 94). The Court **DISMISSES**

**without prejudice** the claims against Defendants Moore and Galloway in Count 2. At the close of the case, the Court **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendants Zachary Moore and Darren Galloway and against Plaintiff Michael N.B. Attaway on Count 2. Remaining in this case are the claims against Defendant Dean in Count 1 and the claims against Defendant David and Brown in Count 3.

**IT IS SO ORDERED.**

**DATED:   March 27, 2025.**

Digitally signed by Judge Sison
Date: 2025.03.27 15:04:18 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**